# STATE OF MICHIGAN

# COURT OF APPEALS

BRANDON MCALLISTER,

Plaintiff-Appellant,

V

TOWNSHIP OF BRIDGEPORT,

Defendant-Appellee.

UNPUBLISHED
July 12, 2016

No. 326801
Saginaw Circuit Court
LC No. 13-20193-CZ

Before: SAWYER, P.J., and HOEKSTRA and WILDER, JJ.

PER CURIAM.

In this action under the Persons with Disabilities Civil Rights Act (PWDCRA), MCL 37.1101 *et seq.*, plaintiff appeals as of right the trial court's opinion and order granting defendant summary disposition under MCR 2.116(C)(10). We reverse and remand for further proceedings consistent with this opinion.

## I. FACTS

This case arises out of the termination of plaintiff's employment as a police officer with the Bridgeport Township Police Department, allegedly in violation of the PWDCRA. Specifically, in the trial court plaintiff alleged that defendant fired him in retaliation for his participation in another PWDCRA civil lawsuit, *Jamie Severs v Bridgeport Township*. Plaintiff alleged that in *Severs* he "authored documents which substantiated Severs' claims of disability discrimination," that he "provided testimony which was helpful to Severs including that [Severs] was a good officer and had performed satisfactorily," and that after his participation in *Severs*, the chief of police, Allen Navidonski, began a "pretextual campaign" to discipline and harass him to create a "paper trail" so that the chief could ultimately fire him.

Defendant responded that plaintiff was not fired because of his participation and testimony in *Severs*, but, among other numerous instances of insubordination and misconduct, was fired primarily as a result of another incident that occurred at the end of plaintiff's shift on March 5, 2013. Plaintiff left a police Chevy Tahoe running at a fire scene with a shotgun and AR-15 rifle in view. Also, plaintiff's personal computer and Kindle were left in a zipped bag on the front seat. Plaintiff alleged that the chief of police "seized [his] personal laptop computer and Kindle out of the patrol vehicle." The next day, the chief called plaintiff into his office, told him that he was suspended, then ordered him to leave. Plaintiff refused to leave the office until his computer and Kindle were returned. He was again ordered to leave. Plaintiff then stood

-1-

"nose to nose" with the chief and told him to "make a move." Another officer who witnessed the incident called the Michigan State Police, and plaintiff eventually left the chief's office. Plaintiff was fired shortly after the incident, on March 22, 2013, as the incident, according to the chief, created a "non-repairable employment situation." The township manager, Rose Licht, made the final decision to fire plaintiff based on the chief's recommendation that she do so.

Defendant moved for summary disposition. In support, defendant noted that, during plaintiff's deposition, plaintiff admitted to the events that occurred in the chief's office after the Tahoe incident, and plaintiff also acknowledged that disobeying a direct order from the chief was misconduct for which he could be discharged on a first offense basis. Defendant further noted that plaintiff had admitted that he had lied as a police officer, failed to take care of the Tahoe or the firearms within the Tahoe, was absent from duty without authorization, and neglected his duties, all of which was conduct for which an officer could be discharged on a first offense basis. Defendant asserted that, pursuant to the PWDCRA, only plaintiff's termination could be considered an "adverse employment action," such that all the other "paper trail" or "pretextual campaign" actions that plaintiff complained about were irrelevant. Defendant argued that plaintiff's participation in *Severs* could not be considered a "significant factor in his termination" because there was not sufficient evidence that his discharge was caused by his participation in that lawsuit, as opposed to the significant and numerous instances of misconduct that plaintiff acknowledged and which ultimately led to his discharge. Defendant further argued that even if plaintiff could satisfy the requirements for a prima facie retaliation case under the PWDCRA, no reasonable fact-finder could conclude that defendant's nondiscriminatory reason for terminating plaintiff's employment (the incident in the chief's office) was a pretext, because plaintiff conceded all the facts surrounding that incident, even his challenge to the chief to "make a move." Defendant asserted that there was no genuine issue of material fact that the chief rightfully—and necessarily—concluded that the employment relationship could not be repaired.

In response, plaintiff argued that the chief took actions that undermined plaintiff's supervisory and command authority, as well as his demotions and termination, all of which constituted adverse employment actions under the PWDCRA. In regard to defendant's argument concerning the causation element of a prima facie retaliation case under the PWDCRA, plaintiff asserted that a reasonable fact-finder could conclude that the chief imposed adverse employment actions on plaintiff because of his participation in *Severs*. Concerning pretext, plaintiff asserted that a reasonable fact-finder could determine that the reasons given for plaintiff's termination were merely a pretext for a dismissal retaliating against plaintiff for his involvement in *Severs*.

In granting summary disposition to defendant, the court "assumed, without deciding, that all of the actions Plaintiff contends constituted adverse employment actions are properly so labeled." In regard to causation—the only element for a prima facie case that was at issue—the court held that plaintiff did not meet his burden of proof, reasoning as follows:

> The essence of Plaintiff's argument is that an event would happen in the *Severs* Case, and an employment-related action would be taken by the Township at a later point in time. The most important causal connection that Plaintiff makes – and wants a jury to make at a trial – is between his trial testimony given on October 24, 2012 in the Severs Case and his termination from employment on March 22, 2013. . . . [T]he lapse of nearly five months renders his timing

-2-

argument extremely dubious. At the end of the day, the Court concludes that a reasonable juror, based upon the evidence presented by both parties, could not draw an inference of a "clear nexus" between the protected activity and the termination without engaging in an impermissible degree of speculation and conjecture. Thus, holding a trial would be a futile exercise, and the Township's motion should be granted.

The court further held that even if plaintiff had made out a prima facie case (i.e., satisfied his burden regarding the causation element), defendant would still be entitled to summary disposition because plaintiff failed to present evidence from which a rational juror could conclude that defendant's stated nonretaliatory reason for terminating plaintiff was pretextual:

The Court holds, as a matter of law, that the Township's stated reasons did have a basis in fact, and that no reasonable person could find that they were, taken in their entirety, insufficient to justify termination. On this record, the only tenable argument is that the Township's explanation for the firing is untrue, and that the true, actual reason for the termination was Chief Navidonski's ire at the *Severs* settlement, which he attributed to Plaintiff's testimony. For the same reasons the Court found Plaintiff's evidence of causal connection insufficient to justify a trial, the Court finds that a reasonable juror could not, without the exercise of an impermissible degree of conjecture and speculation, find that Plaintiff's termination was motivated by a desire to retaliate for his testimony in the *Severs* Case.

This appeal followed.

## II. STANDARD OF REVIEW

A trial court's decision regarding a motion for summary disposition is reviewed de novo. *Ormsby v Capital Welding, Inc*, 471 Mich 45, 52; 684 NW2d 320 (2004) (citation omitted).

A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. The trial court must consider the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, in the light most favorable to the party opposing the motion, and if the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Wilson v Alpena Co Rd Comm*, 474 Mich 161, 166; 713 NW2d 717 (2006) (citations omitted).]

"A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "This Court is liberal in finding genuine issues of material fact." *Jimkoski v Shupe*, 282 Mich App 1, 5; 763 NW2d 1 (2008).

## III. ANALYSIS

Plaintiff argues on appeal that the trial court erred in granting defendant's motion for summary disposition and dismissing plaintiff's PWDCRA claim. Specifically, plaintiff contends

that he established a prima facie case under the PWDCRA, thereby establishing a preumption of retaliation, and that he presented sufficient evidence for a rational fact-finder to conclude that the nonretaliatory reason defendant proffered for his termination was pretextual. We agree in both respects.

The PWDCRA provides that an employer shall not "[r]etaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act." MCL 37.1602(a). We construe the retaliation provision of the PWDCRA in accord with the retaliation provision of the Elliot Larsen Civil Rights Act (ELCRA), MCL 37.2701(a), because the ELCRA retaliation provision contains precisely the same language as the PWDCRA retaliation provision. See *Mitan v Neiman Marcus*, 240 Mich App 679, 681-682; 613 NW2d 415 (2000).[1] To establish a prima facie case of retaliation under MCL 37.1602(a)

> a plaintiff must show: (1) that he engaged in a protected activity, (2) that this was known by the defendant, (3) that the defendant took an employment action adverse to the plaintiff, and (4) that there was a causal connection between the protected activity and the adverse employment action. [*Aho v Dep't of Corrections*, 263 Mich App 281, 288-289; 688 NW2d 104 (2004).]

If the plaintiff establishes a prima facie case, a presumption of retaliation arises, which the defendant can rebut by offering a legitimate, nonretaliatory reason for the adverse employment action. *Aho*, 263 Mich App at 289. If the defendant provides such a reason, the burden shifts back to the plaintiff to demonstrate that the evidence is sufficient to permit a reasonable fact-finder to conclude that the defendant's proffered legitimate reason was not the true reason but merely a pretext for the adverse employment action. *Id.* In other words, the familiar "burden-shifting analysis under *McDonnell Douglas [v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973)], applies to PWDCRA claims." *Bachman v Swan Harbour Ass'n*, 252 Mich App 400, 433 n 26, 653 NW2d 415 (2002).

Here, as for the first element of a prima facie case, plaintiff asserts that he engaged in a protected activity when, in *Severs*, he testified in a proceeding or hearing under the PWDCRA. Defendant does not dispute that this element has been met. Likewise, as for the second element, the parties agree that plaintiff's engagement in such protected activity was known to defendant. Thus, the first two elements are not in dispute.

With regard to the third element, the parties disagree about what actions allegedly taken by defendant constitute "an employment action adverse to the plaintiff." Plaintiff argues that all the actions he complains of (e.g., intensified scrutiny of his job performance by a supervisor,

---

[1] The Whistleblowers' Protection Act, MCL 15.261 *et seq.*, also contains statutory language similar to that found in the PWDCRA. It requires a plaintiff to present evidence that "a causal connection exists between the protected activity and the discharge or adverse employment action." *Shaw v Ecorse*, 283 Mich App 1, 8; 770 NW2d 31 (2009).

having to remove his treadmill from the police department workout room, being reassigned from a plain-clothed to a uniformed sergeant, having his shift changed, and having his request to attend a seminar rejected while other officers were allowed to go) constitute adverse employment actions under the PWDCRA. On the other hand, defendant argues that plaintiff's termination is the only adverse employment action recognized under the PWDCRA.

In *Chen v Wayne State Univ*, 284 Mich App 172, 201-202; 771 NW2d 820 (2009), this Court explained:

> There is no exhaustive list of what constitutes adverse employment actions. And what might constitute an adverse employment action in one employment context might not be actionable in another employment context. . . . Nevertheless, regardless of the employment context, in order to be actionable, an employment action must be materially adverse to the employee—that is, it must be more than a mere inconvenience or minor alteration of job responsibilities. In addition, there must be an objective basis for demonstrating that the employment action is adverse because a plaintiff's subjective impressions are not controlling. Materially adverse employment actions are akin to termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation. [Quotation marks and citations omitted.]

Further, "[i]n determining the existence of an adverse employment action, courts must keep in mind the fact that work places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that to the level of a materially adverse employment action." *Peña v Ingham Co Rd Comm*, 255 Mich App 299, 312; 660 NW2d 351 (2003) (quotation marks and citations omitted).

Here, it is undisputed that plaintiff's termination was an adverse employment action under the PWDCRA. Additionally, some of the other things about which plaintiff complains could *arguably* constitute adverse employment actions. For example, although it does not appear that plaintiff received less pay or benefits when he was "demoted" from detective sergeant to patrol sergeant or "reassigned" from a plain-clothes detective position to a uniformed investigator position, it does appear that the new positions had less distinguished titles or significantly diminished plaintiff's material responsibilities on the force. Generally, intensified scrutiny of plaintiff's job performance by his supervisor would not be considered an adverse employment action, nor would actions such as having to remove his treadmill from the police department workout room, having his shift changed, having his "dailies" returned for allegedly petty and trivial reasons, being removed from special assignments, having other officers allowed to act as his supervisor, or having his request to attend a seminar rejected while other officers were allowed to attend be considered adverse employment actions. Typically, such work environment changes are determined to be "mere inconvenience[s] or minor alteration[s] of job responsibilities," which do not rise to a level "akin to termination of employment." See *Chen*, 284 Mich App at 201-202.

The trial court, however, did not rule on this issue, instead "assum[ing], without deciding, that all of the actions" about which plaintiff had complained were properly "labeled" as adverse employment actions. "Ordinarily, we do not address issues . . . that were not decided by the trial court." *Tingley v Kortz*, 262 Mich App 583, 588; 688 NW2d 291 (2004). Accordingly, for the purposes of our review here, we will assume—without deciding—that all of the actions with which plaintiff takes issue were adverse employment actions.

Regarding the fourth element, "[t]o establish a causal connection, a plaintiff must demonstrate that his participation in the protected activity was a 'significant factor' in the employer's adverse employment action, not merely that there was a causal link between the two events." *Aho*, 263 Mich App at 289. "Thus, mere discriminatory or adverse action will not suffice as evidence of retaliation unless the plaintiff demonstrates a *clear nexus* between such action and the protected activity." *Id.* (emphasis added). "To prevail, [the] plaintiff ha[s] to show that his employer took adverse employment action *because of* [the] plaintiff's protected activity, [rather than] merely show[ing] that his employer disciplined him after the protected activity occurred." *West*, 469 Mich at 185 (emphasis in original). In *Shaw*, 283 Mich App at 14-15, a Whistleblower Protection Act case, this Court explained,

> A plaintiff may establish a causal connection through either direct evidence or indirect and circumstantial evidence. Direct evidence is that which, if believed, requires the conclusion that the plaintiff's protected activity was at least a motivating factor in the employer's actions. To establish causation using circumstantial evidence, the circumstantial proof must facilitate reasonable inferences of causation, not mere speculation. Speculation or mere conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. In other words, the evidence presented will be sufficient to create a triable issue of fact if the jury could reasonably infer from the evidence that the employer's actions were motivated by retaliation. [Citations and quotation marks omitted.]

Following plenary review of the record, we conclude, contrary to the trial court's ruling, that plaintiff presented sufficient evidence to establish a genuine issue of material fact whether his protected activity (i.e., testifying in *Severs*) was a significant factor in defendant's decision to terminate him. Plaintiff adduced evidence that (1) the township manager and the chief were unhappy with the settlement and believed that it was plaintiff's fault, (2) at least a portion of the *Severs* settlement came out of township funds, (3) the chief believed that the *Severs* plaintiff's claim was meritless and thus the chief "wasn't happy" about the decision to settle, (4), the chief's "demeanor" towards plaintiff changed markedly—in the opinion of another officer—"three of four months" after the resolution of *Severs*, (5) other officers believed that the chief was capable of retaliating against his subordinates, (6) the chief recommended plaintiff's termination and conducted the investigation that led to it, and (7) in deciding to terminate plaintiff, the township manager "[a]bsolutely" relied on the investigatory report compiled by the chief.

Most compelling, however, is evidence concerning inaccuracies—perhaps outright deceptions—in the chief's report. The report explains the chief's rationale for opening the investigation as follows:

On Friday December 7, 2012 I found a sealed envelope on my desk when I came into the office. Upon opening the envelope I found a letter that stated Chief, I am writing in regards to officer safety issues that I have been worrying about for a couple of months involving [plaintiff]. I would like to remain anonymous due to the fear of retaliation from [plaintiff].

According to the report, this anonymous letter alleged that plaintiff slept while on duty, arrived late for work, used a personal laptop and tablet device while on duty, and failed to respond to calls for service or backing up other officers. The chief stated in the report that he was able to determine that Officer Brett Green wrote the anonymous letter from "information on several addresses that I obtained from the dailies over several days from several different officers." At his deposition, the chief likewise testified that the anonymous letter prompted his investigation of plaintiff.

Contrastingly, Green admitted at his deposition that he wrote the "anonymous" letter because he was "pressured" to do so by the chief and the township manager, that the chief verbally instructed Green "to place the envelope under [the chief's] desk," and that he felt would have faced "trouble at work" had he refused to pen the letter. Further, the chief's report catalogs negative statements about plaintiff from other officers that those officers, when deposed in this matter, denied having made. Finally, the report indicates that other officers approached the chief during the investigation and proposed a union vote of "no confidence" against plaintiff, and the chief testified that it was not his idea to have a vote of no confidence against plaintiff. But plaintiff has adduced testimony from several officers indicating that it was, in fact, the chief who induced the union vote against plaintiff.

Given such evidence, a rational fact-finder could reasonably infer that plaintiff's protected activity was a significant factor in defendant's decision to terminate him. Accordingly, viewing the evidence in the light most favorable to plaintiff as the nonmoving party, we conclude that he presented sufficient evidence to establish a prima facie case of retaliation under the PWDCRA. By holding otherwise, the trial court erred.

That conclusion, however, does not end our analysis. After plaintiff established a prima facie case, the burden shifted to defendant to present a legitimate, nonretaliatory reason for terminating plaintiff. Defendant did so, contending that it terminated plaintiff for insubordination and misconduct. Thus, the burden shifted back to plaintiff to demonstrate that defendant's proffered reason was a mere pretext for unlawful retaliation. The trial court held that plaintiff failed to present evidence to create a genuine issue of material fact regarding pretext. We disagree.

A plaintiff can establish that a defendant's proffered legitimate reasons for the adverse employment action are a pretext " '(1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision.' " *Campbell v Dep't of Human Servs*, 286 Mich App 230, 241; 780 NW2d 586 (2009), quoting *Feick v Monroe Co*, 229 Mich App 335, 343; 582 NW2d 207 (1998). "False and shifting reasons are acceptable methods of demonstrating that the employer's alleged nondiscriminatory reasons

are in fact pretextual." *Fuller v Mich Dep't of Transp*, 580 Fed Appx 416, 426 (CA 6, 2014) (analyzing, *inter alia*, a plaintiff's ELCRA claims).[2]

On this record, plaintiff cannot demonstrate that defendant's proffered reason for the termination lacks any basis in fact. On the contrary, plaintiff *admitted* that he committed the insubordination and misconduct that defendant cited to justify his termination.

Even so, given the seeming falsehoods in the chief's report, and the fact that the township manager admits that she relied on that report when deciding to terminate plaintiff, we conclude that a triable question of fact remains regarding pretext. In essence, plaintiff's theory of the case is that, in retaliation for plaintiff taking part in *Severs*, the chief intentionally took steps over the course of several months to bait plaintiff into a terminable offense then seized upon that offense as grounds for termination. Although it is a close question, after reviewing the entire record we are unwilling to decide as a matter of law that *no* rational fact-finder could reasonably infer that the chief's *Severs*-related animus against plaintiff was the actual factor motivating the termination decision. Hence, we conclude that the trial court erred by granting defendant summary disposition under MCR 2.116(C)(10).

We reverse and remand this matter to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction. As the prevailing party, plaintiff may tax costs pursuant to MCR 7.219.

/s/ David H. Sawyer
/s/ Joel P. Hoekstra
/s/ Kurtis T. Wilder

---

[2] We recognize that *Fuller* is not binding here but nevertheless find it persuasive. See *Fed Home Loan Mtg Ass'n v Kelley*, 306 Mich App 487, 495; 858 NW2d 69 (2014) ("Though not binding on this Court, federal precedent is generally considered highly persuasive when it addresses analogous issues.") (quotation marks and citation omitted).