AHO v DEPARTMENT OF CORRECTIONS

Docket No. 247801. Submitted May 18, 2004, at Marquette. Decided
August 17, 2004, at 9:00 A.M.

David M. Aho brought an action in the Marquette Circuit Court
against the Michigan Department of Corrections (MDOC), alleging
retaliatory discharge in violation of the Persons With Disabilities
Civil Rights Act (PWDCRA), MCL 37.1101 *et seq.*, and a violation of
the Civil Rights Act (CRA), MCL 37.2101 *et seq.*, with respect to the
defendant's failure to purge its records of information concerning
the plaintiff's arrest, but not conviction, for marijuana possession.
The court, John R. Weber, J., after reviewing the parties' cross-
motions for summary disposition, denied summary disposition to
both parties on the retaliatory discharge claim on the basis of
genuine issues of material fact regarding whether the decision
maker who terminated the plaintiff's employment as a corrections
officer was aware of the plaintiff's involvement in a 1995 civil
action against the MDOC, whether a causal nexus existed between
the earlier action and the plaintiff's termination, and whether the
MDOC had a legitimate nonretaliatory reason for termination, i.e., a
zero-tolerance policy for marijuana possession, or whether that
reason was merely a pretext for retaliation. The court, however,
granted summary disposition to the MDOC on the plaintiff's CRA
claim. The MDOC appealed by leave granted, and the plaintiff
cross-appealed.

The Court of Appeals *held*:

1. The court erred in denying summary disposition to the MDOC
on the plaintiff's PWDCRA claim. The plaintiff failed to establish a
prima facie case of retaliatory discharge under the PWDCRA by
failing to present evidence from which a reasonable trier of fact
could find that his participation five years earlier in a class action
against the MDOC was a significant factor in the termination of his
employment.

2. The trial court properly granted summary disposition to the
MDOC on the plaintiff's CRA claim. Regardless of whether the MDOC is
a "law enforcement agency" as defined by MCL 37.2205a of the
CRA, as amended by 1999 PA 202, and authorized to use misde-
meanor arrest records to pursue disciplinary action against the

plaintiff, there is no causal connection between any alleged statutory violation and the alleged retaliatory discharge because the MDOC knew of the plaintiff's arrest through sources other than the actual arrest record.

Affirmed in part, reversed in part, and remanded for entry of an order consistent with the Court of Appeals opinion.

*Hurlburt, Tsiros, Allweil & Perez, P.C.* (by *Mandel I. Allweil*), for the plaintiff.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Frank J. Monticello*, Assistant Attorney General, for the defendant.

Before: WHITBECK, C.J., and GRIFFIN and BORRELLO, JJ.

GRIFFIN, J. In this case alleging retaliatory discharge, defendant Michigan Department of Corrections (MDOC) appeals by leave granted the circuit court order denying in part defendant's motion for summary disposition. Plaintiff David Aho cross-appeals from the circuit court's denial of his motion for summary disposition in the same order. We affirm in part and reverse in part.

I

Plaintiff had been employed with the MDOC since 1983 as a corrections officer at the Marquette Branch Prison (MBP). On July 12, 1999, while on an extended medical leave for stress, plaintiff was stopped by the police on reasonable suspicion of drunken driving.[1] In plain view between the driver's seat and door, the officer observed what he called a "one-hitter" or "dug out," which is a wooden device with two compartments, one to hold a

---

[1] A Marquette city police officer observed plaintiff's vehicle weaving in traffic and narrowly missing parked vehicles.

small metal cigarette for smoking marijuana and another to hold the marijuana. After plaintiff failed sobriety tests administered by the officer, he was arrested and charged with operating a vehicle while under the influence of intoxicating liquor or while having an unauthorized blood alcohol level (OUIL/UBAL), and possession of marijuana. On August 26, 1999, pursuant to a plea agreement, plaintiff pleaded guilty to a charge misdemeanor OUIL/UBAL in exchange for dismissal of the marijuana possession charge. He was sentenced to serve six months on probation and pay a fine of $540.

Plaintiff returned to work from medical leave in early January 2000. The MBP administration had been advised of plaintiff's arrest and charges, and an investigation was conducted to determine whether plaintiff had violated any employee work rules. A report was ultimately issued, concluding that plaintiff had violated Work Rule No. 22, Criminal Acts, any Misdemeanor (Except Illegal Substances), and Work Rule No. 5, Conduct Unbecoming a Department Employee. Plaintiff was thereafter charged with violating these work rules, and a disciplinary conference was held on February 11, 2000. At the conference, plaintiff stated: "I pled guilty to OUIL and the Possession of Marijuana was dropped as the item was not mine. The other guy [passenger] admitted later it was his and the prosecutor dropped the charge. Other than that, I am guilty of OUIL/Unlawful Bodily Alcohol content."[2]

A written summary of the disciplinary conference was submitted to Warden Jerry Hofbauer, who then

[2] The record, however, indicates that the passenger consented to a pat-down search of his person, resulting in the seizure of a "dug out" device from his pants pocket. The passenger admitted to the officer that he had smoked marijuana, but denied owning the "dug out" seized next to the driver's door and denied knowing whether plaintiff had smoked marijuana.

prepared an employee disciplinary report, in which he recommended that plaintiff receive a five-day suspension for the OUIL/UBAL conviction. The report was reviewed by Marsha Foresman, special assistant to MDOC Director Bill Martin. Foresman disagreed with the warden's recommendation and, instead, recommended that plaintiff be discharged, explaining:

> The Dept. maintains a policy of zero tolerance for use or possession of controlled substances. Documentation shows Mr. Aho was in possession of marijuana and/or drug paraphernalia whether he was convicted or not of such possession.

In cases of demotion or discharge, Director Martin was responsible for making the final decision after review of the employee's disciplinary packet. Director Martin made the decision to terminate plaintiff's employment, and plaintiff was discharged on March 20, 2000. Martin testified at his deposition that, at that time, he was unaware that plaintiff had been involved in an earlier lawsuit against the MDOC.

Plaintiff filed an administrative grievance regarding his termination. An arbitration hearing was held, at which plaintiff's wife testified that the marijuana in her husband's vehicle belonged to her. As previously noted, plaintiff never made that assertion at his disciplinary conference; rather, he stated that his passenger had admitted that the marijuana belonged to him. The arbitrator, finding that the MDOC's zero tolerance policy was not in writing and that the MDOC could not establish with clear and convincing evidence that the marijuana in fact belonged to plaintiff, ordered that he be reinstated. At that time, plaintiff indicated that he was unable to return to work and continued on a medical leave of absence until he took a waived-rights leave of absence in April 2002.

In October 2001, plaintiff filed the present two-count complaint against defendant alleging retaliatory discharge in violation of the Persons With Disabilities Civil Rights Act (PWDCRA), MCL 37.1101 *et seq.*, and violation of the Civil Rights Act (CRA), MCL 37.2101 *et seq.* With respect to the PWDCRA claim, plaintiff alleged that his discharge was in retaliation for his involvement in a 1995 lawsuit challenging the MDOC's no-facial-hair policy. Seven employees, including plaintiff, had challenged the requirement that they shave their beards in order to meet the air-seal requirements of new gas masks. At the time of the lawsuit, Kenneth McGinnis was the department director (Bill Martin did not become director until 1999) and Foresman was the acting personnel director. In July 1996, a settlement agreement was reached that exempted ten percent of corrections officers from the clean-shaven rule. Plaintiff, who has a beard, was included in the ten-percent exemption and was also awarded certain leave credits. In count II of his complaint, plaintiff alleged that defendant's failure to purge his arrest record from his file violated the CRA, and that defendant wrongfully terminated him in violation of the CRA because it used the drug charge, which was dismissed without any finding of guilt, to terminate plaintiff.

The parties filed cross-motions for summary disposition. Defendant argued that plaintiff could not make out a prima facie case of retaliatory discharge because Bill Martin, the decision maker who terminated plaintiff, testified at his deposition that he was unaware of plaintiff or the 1995 lawsuit. Defendant further contended that the MDOC had a longstanding unwritten policy of zero tolerance toward employees who were involved in drug activity, and submitted an affidavit of Foresman listing eight other employees who had been terminated for such activity, whether or not a convic-

tion resulted. Plaintiff responded by arguing that the actual termination decision was made by Foresman, who was involved in the 1995 lawsuit, was aware of plaintiff's involvement, and had exhibited retaliatory animus toward plaintiff by discharging him, even though he had consistently denied that the marijuana was his, plaintiff's wife had testified that it was hers, and he was not convicted of marijuana possession. Plaintiff further responded that he had been subjected to other forms of retaliation as a consequence of the 1995 lawsuit, including numerous undesirable assignments to the so-called "hole" at the MBP, and MDOC's refusal to comply with the terms of the settlement agreement in the 1995 lawsuit.

In a ruling from the bench, the circuit court granted defendant's motion with respect to plaintiff's CRA count, but denied both parties' motions regarding plaintiff's retaliatory-discharge claim, determining that genuine issues of material fact existed over whether the decision maker who terminated plaintiff was aware of his involvement in the 1995 lawsuit, and whether a causal nexus had been demonstrated between the earlier lawsuit and his termination. The court stated:

> Looked at on a favorable view to the plaintiff, the jury could choose to disbelieve Marsha Foreman's [sic] testimony that she was unaware of plaintiff's involvement in the beard case, and that she, not Martin, made the termination decision or influenced it in a retaliatory way and the jury could find there was a causal connection between the protected activity and the adverse employment action.

The circuit court further held that a genuine issue of material fact existed concerning whether defendant had a legitimate nonretaliatory reason for termination, i.e., a zero-tolerance policy for marijuana possession, and whether this reason was merely a pretext for retalia-

tion. In so holding, the court cited the above factual disputes, as well as the decision of the arbitrator, who determined that MDOC had failed to prove that the marijuana belonged to plaintiff. In particular, the court noted that the MDOC's alleged zero-tolerance policy was not in writing and that "if there was a policy, it was a kind of a floating, ambiguous policy." The trial court concluded:

> Therefore, I believe summary disposition as to Count I must be denied. In making this decision, I have considered the list of cases provided by defendant of terminations without convictions for drug involvement. On favorable view to plaintiff some are distinguishable from this case by being more serious or cases where the drug possession or use is admitted and we don't know from the record as it stands now what other factors might have been involved in those terminations, such as work record issues.

An order reflecting this ruling was entered on March 17, 2003. Defendant now appeals by leave granted, and plaintiff cross-appeals.

II

Defendant contends that the trial court erred in denying its motion for summary disposition on plaintiff's PWDCRA retaliation claim. Defendant maintains that plaintiff has failed to make a prima facie case of retaliatory discharge; specifically, defendant argues there is no genuine issue of material fact that plaintiff's participation in the 1995 lawsuit was not a significant factor in his termination in 2000. We agree.

The grant or denial of a motion for summary disposition is reviewed de novo. *Travelers Ins Co v Detroit Edison Co*, 465 Mich 185, 205; 631 NW2d 733 (2001). A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Maiden v Rozwood*, 461 Mich

109, 120; 597 NW2d 817 (1999). The trial court must consider affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in a light most favorable to the nonmoving party. *Rozwood, supra.* A trial court should grant a motion for summary disposition under MCR 2.116(C)(10) if the affidavits or other documentary evidence show that there is no genuine issue in respect to any material fact, and the moving party is entitled to judgment as a matter of law. *Rozwood, supra*; MCR 2.116(C)(10) and (G)(4). In presenting a C(10) motion, the moving party has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence. *Quinto v Cross & Peters Co*, 451 Mich 358, 362-363; 547 NW2d 314 (1996). The burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists. *Id.* The nonmoving party may not rely on mere allegations or denials in pleadings, but must set forth specific facts showing that a genuine issue of material fact exists. *Id.* If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted. *Id.* at 363. *Smith v Globe Life Ins Co*, 460 Mich 446, 454-455; 597 NW2d 28 (1999).

Section 602(a) of the PWDCRA provides that a person or persons shall not "[r]etaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act." MCL 37.1602(a). To establish a prima facie case of unlawful retaliation under § 602(a), a plaintiff must show: (1) that he engaged in a protected activity, (2) that this was known by the defendant, (3) that the defendant took an employment action adverse to the plaintiff, and (4) that there was a causal connection

between the protected activity and the adverse employment action. *Bachman v Swan Harbour Assoc*, 252 Mich App 400, 435; 653 NW2d 415 (2002); *Mitan v Neiman Marcus*, 240 Mich App 679, 681; 613 NW2d 415 (2000); *DeFlaviis v Lord & Taylor, Inc*, 223 Mich App 432, 436; 566 NW2d 661 (1997). To establish a causal connection, a plaintiff must demonstrate that his participation in the protected activity was a "significant factor" in the employer's adverse employment action, not merely that there was a causal link between the two events. *Barrett v Kirtland Comm College*, 245 Mich App 306, 325; 628 NW2d 63 (2001). Thus, mere discriminatory or adverse action will not suffice as evidence of retaliation unless the plaintiff demonstrates a clear nexus between such action and the protected activity. *Mitan, supra* at 681-682.

If the plaintiff establishes a prima facie case, "the burden shifts to the defendant to articulate a legitimate business reason for discharge." *Roulston v Tendercare (Michigan), Inc*, 239 Mich App 270, 281; 608 NW2d 525 (2000). If the defendant provides such a reason, the burden shifts back to the plaintiff "to prove that the legitimate reason offered by the defendant was not the true reason, but was only a pretext for the discharge." *Id.*

On appeal, defendant contends that plaintiff has failed to establish the fourth element of a prima facie case, i.e., that the protected activity in which he engaged (the 1995 lawsuit) was a significant factor in the adverse personnel action (his 2000 dismissal). We agree.

Plaintiff's PWDCRA claim is based on assertions that Foresman engineered his dismissal because she was unhappy with his participation in the 1995 lawsuit, and that this desire to retaliate is evidenced by: (1) Foresman's delay in giving plaintiff the benefits to which the

lawsuit settlement entitled him, and (2) the allegedly bad work assignments he received in the prison's "hole," or solitary-confinement section.

In denying defendant's motion for summary disposition, the trial court in the instant case cited plaintiff's affidavit in concluding that a material factual question existed regarding whether there was a causal connection between the 1995 lawsuit and plaintiff's termination. In the affidavit, plaintiff asserted that he called Foresman several times on the phone in January and February 1997 to get annual leave and sick leave credits "I deserved." Plaintiff contends that the delay in receiving those credits is evidence of retaliatory conduct by Foresman.

However, in contrast to plaintiff's conclusory allegations contained in his affidavit that Foresman was responsible for the delay in crediting plaintiff's leave, the record and the deposition testimony of an MBP personnel officer clearly show that the delay stemmed from bookkeeping discrepancies between the settlement agreement and records at the prison in which plaintiff worked, and posed a problem at the MBP personnel office in Marquette, not with Foresman, who was in Lansing. Plaintiff's affidavit establishes, at most, that plaintiff repeatedly requested from Marsha Foresman that he be awarded his leave credits due under the settlement agreement. Plaintiff's allegations do not, however, show that defendant discharged plaintiff *because* he engaged in protected activity or that such activity was causally related to his discharge.

Moreover, the record belies plaintiff's contention that his assignments to the "hole" in 1997 constitute evidence of retaliatory conduct by defendant. Plaintiff filed a grievance over his assignments in August 1997, which was settled internally at the MBP with a compromise

agreement. In that grievance, plaintiff never alleged that his work assignments were made in retaliation for his involvement in the 1995 lawsuit. Clearly, in 1997, plaintiff did not indicate in any manner that his assignments to segregation were retaliatory. Consequently, plaintiff's current allegations of retaliation based on those allegedly adverse assignments made three years earlier are not supported by the contemporaneous record made at the time of the assignments or the instant trial court record.

In addition, the fact that a long time passed between plaintiff's participation in the protected activity, the 1995 lawsuit, and his termination in 2000 contradicts plaintiff's contention that the 1995 lawsuit was a significant factor in his termination. Although the timing between the protected activity and the adverse action may in some cases constitute circumstantial evidence pointing to a causal nexus, *Wrenn v Gould*, 808 F2d 493, 501 (CA 6, 1987), in this case, the time between the events was remote—approximately five years—thus seriously undermining any claim by plaintiff of a causal connection. Periods much shorter than five years have been found to be insufficient to demonstrate a causal nexus. See, e.g., *Wixson v Dowagiac Nursing Home*, 866 F Supp 1047, 1057 (WD Mich, 1994) (seven months was too remote to support an inference of retaliation); and *Reeves v Digital Equip Corp*, 710 F Supp 675, 677 (ND Ohio, 1989) (three months was too remote to support an inference of retaliation). Courts have consistently held that a lengthy period between the protected activity and the adverse employment action precludes a nexus between the two events. See *Filopovic v K & R Express Systems, Inc*, 176 F3d 390, 399 (CA 7, 1999), quoting *Johnson v Univ of Wisconsin—Eau Claire*, 70 F3d 469, 480 (CA 7, 1995) ("A substantial lapse of time between the protected activity and the adverse employment

action 'is counter-evidence of any causal connection.' "); *Vickowski v Hukowicz*, 201 F Supp 2d 195, 210 (D Mass, 2002) ("[T]he fact that four and one-half years passed between the settlement of the 1990 lawsuit and the adverse action (five and one-half years if calculated from the date the lawsuit was filed) severely undercuts, if not eviscerates, any causal connection."); and *Ways v City of Lincoln*, 909 F Supp 1316, 1325 (D Neb, 1995) (holding that five years between the prior lawsuit and allegedly retaliatory acts was too long to provide a causal nexus).

Finally, we note that Director Martin, who was ultimately responsible for plaintiff's termination, became director of the MDOC in January 1999. His uncontested deposition testimony indicates that he was not familiar with the 1995 gas-mask lawsuit at the time he terminated plaintiff's employment in March 2000.

In sum, we conclude the trial court erred in concluding that there was a genuine issue of material fact that plaintiff's participation in the 1995 lawsuit was a significant factor in his discharge. Plaintiff has failed to establish a prima facie case of retaliatory discharge under the PWDCRA. Plaintiff's participation in the protected activity is linked to the subsequent adverse employment action, five years later, only by conjecture and speculation. Plaintiff has failed to present evidence from which a reasonable jury could find that his participation in a 1995 class action lawsuit was a "significant factor" in his termination from employment in 2000, after marijuana was found in his car when he was arrested for driving while intoxicated the previous year. The undisputed record evidence establishes, through the testimony of numerous MDOC administrative employees, including Director Martin, that it had long been department policy to terminate employees in-

volved with illegal drugs, regardless of whether a criminal conviction is sought or obtained. The fact that plaintiff engaged in a protected activity under the PWDCRA does not immunize him from an otherwise legitimate or unrelated adverse employment action. Cf. *West v Gen Motors Corp*, 469 Mich 177, 187; 665 NW2d 468 (2003). Defendant was therefore entitled to summary disposition on plaintiff's retaliatory discharge claim.

III

Plaintiff cross-appeals the trial court's entry of summary disposition in favor of defendant with respect to count II of the complaint, in which plaintiff asserts that defendant violated § 205a of the CRA, MCL 37.2205a,[3] when it failed to purge plaintiff's arrest record for marijuana possession and used this record to pursue disciplinary action against him.

On August 31, 1999, the Attorney General issued Opinion No. 7030, concluding that the MDOC was not a "law enforcement agency" within the meaning of § 205a and, thus, was prohibited from maintaining records regarding an employee's misdemeanor arrest not resulting in a conviction. The opinion indicated that the MDOC was to purge information from its files pertaining to such arrests.

On March 10, 2000, ten days before plaintiff was discharged, the Legislature enacted 1999 PA 202, amending § 205a of the CRA by defining the term "law

---

[3] MCL 37.2205a provides in relevant part:

(1) An employer . . . other than a *law enforcement agency* of this state . . . shall not in connection with . . . the terms, conditions, or privileges of employment . . . maintain a record of information regarding a misdemeanor arrest, detention, or disposition where a conviction did not result. [Emphasis added.]

enforcement agency" to include the MDOC.[4] In the instant case, the trial court granted summary disposition to defendant on plaintiff's CRA claim because it determined that, in light of the enactment of 1999 PA 202 only six months after the issuance of the Attorney General's opinion, the Legislature always considered the MDOC to be a law enforcement agency and, thus, exempt from the provisions of § 205a.

On appeal, plaintiff now claims that the trial court erred in so holding and contends that defendant was required to follow the Attorney General's opinion and purge plaintiff's arrest record from its files. Plaintiff argues the amendment of the statute should not be given retroactive effect to legitimize defendant's retention of the record of his arrest for marijuana possession, which was the basis for his discharge.

However, we find it unnecessary to reach the question whether the legislative action was curative and, therefore, to be given retroactive effect. See generally, *Seaton v Wayne Co Prosecutor (On Second Remand)*, 233 Mich App 313, 316-323; 590 NW2d 598 (1998). Defendant knew of plaintiff's arrest through other sources, apart from its retention of his actual arrest record, and, therefore, plaintiff cannot establish any causal connection between any putative statutory violation and his alleged retaliatory discharge. We conclude the trial court did not err in granting summary disposition to defendant on plaintiff's CRA claim.

Affirmed in part, reversed in part, and remanded for entry of an order consistent with this opinion. We do not retain jurisdiction.

---

[4] MCL 37.2205a(2) now provides:

As used in this section, "law enforcement agency" includes the state department of corrections.