# STATE OF MICHIGAN

# COURT OF APPEALS

KAREN CAMIL COOK,

Plaintiff-Appellant,

v

DTE ENERGY CORPORATE SERVICES, LLC,

Defendant-Appellee.

UNPUBLISHED
October 2, 2018

No. 339879
Wayne Circuit Court
LC No. 16-002930-CD

Before: M. J. KELLY, P.J., and MARKEY and FORT HOOD, JJ.

PER CURIAM.

In this employment dispute, plaintiff, Karen Camil Cook, appeals by right the trial court's order dismissing all her claims against defendant, DTE Energy Corporate Services, LLC. On appeal, she maintains that the trial court erred when it dismissed her claims that DTE engaged in conduct prohibited under the Persons with Disabilities Civil Rights Act (the Disabilities Civil Rights Act), MCL 37.1101 *et seq.* We conclude that the trial court did not err when it determined that Cook failed to establish a genuine issue of material fact on one or more elements of each claim. Accordingly, we affirm.

## I. BASIC FACTS

Cook began working for Mich Con in 1980 and worked for DTE after it merged with Mich Con. Cook worked as a business support specialist. DTE expected its specialists to submit weekly production schedules to document their work. The productivity reports tracked the invoices that the specialist processed and how much other work he or she performed during the week. The specialists were expected to maintain a productivity level of 90% or more. A specialist with productivity of 90% to 124% would get a rating of "fully meets" expectations. A specialist with productivity from 80% to 89% would get a rating of "meets many" expectations. And a specialist with productivity less than 80% would get a rating of "does not meet" expectations. The productivity rating was calculated using the data from days that the specialist actually worked; the figure did not reflect time off.

Cook took intermittent family leave to care for her father in 2010 and 2011. There was also evidence that she suffered a fall and took time off for her injury. She additionally had various physical ailments, such as diabetes and carpal tunnel syndrome.

Philip Arnold was Cook's supervisor in 2010 and prepared Cook's evaluation. He wrote that Cook had a 114% productivity rating and gave her a "fully meets" rating for productivity, but he noted that there were "three months of missing data" because Cook did not timely submit "productivity schedules." Arnold testified that that Cook's performance had "dropped" by 2012. He stated that he worked around Cook's problems with making entries into the system which were caused by her carpal tunnel syndrome. She was given a different responsibility, and the number of payments that she had to process were reduced. Arnold stated that Cook was not rated negatively because she took leaves of absence. Rather, he worked with her to enable her to perform, and the goals assigned to her reflected what she had to meet.

Arnold also raised the issue of productivity reports in Cook's evaluation for 2012. He gave Cook a "does not meet" rating for productivity because there was "[n]o data to assess"; Cook "did not turn in production reports [for] the whole year." He further wrote that they "discussed" the problem "at least three (3) times during the year and it was never completed."

Arnold again discussed Cook's need to submit production reports in her evaluation for 2013. He gave her a "does not meet" expectations rating for productivity. He explained that he could not "assess her production and use of her time" because Cook did not "submit her production schedules." Arnold gave Cook an overall rating of "meets many" expectations. Cook refused to sign the evaluation.

Phyllis Bartell testified that she was Cook's supervisor from late 2013 to October or November 2014. Bartell gave Cook a "coaching" in January 2014 for attendance issues. Bartell filled out a coaching note in February 2014. She wrote that Cook had missed 155.75 hours in the last "rolling 12 month period," which burdened the other employees who had to cover for her in her absences. Bartell indicated that Cook should minimize her use of sick time. She warned Cook that she may be subject to formal discipline or termination if she failed to improve.

Bartell filled out another coaching note in March 2014. She related that Cook again used sick time for part of a day and called in sick on another. She wrote that the oral reminder would remain active for six months. Bartell wrote in the discussion notes that Cook expressed concern that no one had told her before that her use of time off was unacceptable and that she was working on obtaining intermittent Family Medical Leave.

Bartell testified that Cook wanted to be exempted from going down to retrieve payments from the kiosk because of her knees. She stated that she told Cook to contact Disability Claims Management so that it could review her case and determine if she had a restriction. She also reminded Cook that she still needed to submit her production sheets.

Bartell testified that Cook was placed on a performance improvement plan as a result of her evaluation from 2013. The plan notes showed that Cook had to submit weekly production reports. By April 2014, Cook had been completing the reports and showed a productivity rate of 106%. Nevertheless, Bartell listed the goal as not completed because Cook did not provide enough detail in her reports. Bartell indicated that Cook's attendance was satisfactory during the week. Bartell noted that Cook continued to submit her reports over the following weeks and continued to be present for work.

Bartell summarized the results for Cook's participation in the plan in July 2014. She wrote that Cook completed the required productivity reports but did not consistently maintain a 100% rating. She also noted that Cook did not have any non-managed time off during the period. Bartell congratulated Cook on her successful completion of the plan, but she warned that the failure to maintain the "current level of performance may result in discipline, up to and including termination without another [performance plan] opportunity."

Cook admitted that a document showed that her production rate dropped to 36% in the month after she completed the performance plan. Cook also had a midyear performance review on September 10, 2014. Bartell stated that Cook stopped submitting production reports after the first two weeks in July. She reminded Cook that she needed to submit her production reports. Bartell said she also told Cook that, "although she had made strides in improving her overall productivity, she was still struggling with meeting the minimum and that [she] was not providing the documentation for her production."

Cook testified that she was hospitalized after having three strokes on September 11, 2014. She stated that there were no external indications of the strokes, but there were internal signs. She suffered from confusion and vision impairment. Cook said her doctors told her that she could not go back to work and that she "was not fit to work at any time." Cook took leave from work after her hospitalization which was extended through December 2014. Cook's physician gave a tentative return date of March 2, 2015. The note indicated that Cook was totally disabled and could not return to work.

In Cook's 2014 Evaluation, Bartell wrote that Cook was "at risk" or "off track" on several goals. She wrote that Cook had not submitted any documentation for her work since "late July." As a result, her productivity for July and August was 0% and her year-to-date productivity rating was 78%. Bartell gave her an overall rating of meets many expectations.

On January 13, 2015, Cook submitted to examination by an independent medical examiner, Dr. Shlomo Mandel, and he opined that Cook did not have any medical conditions that would prevent her from returning to her regular employment activities. For that reason, DTE sent a letter to Cook asking her to return to work by January 27, 2015, and closed her disability claim.

Pat Artist became Cook's temporary supervisor in December 2014. Artist stated that she received an e-mail from "Disability Management" indicating that Cook was expected to return on a specific date. Cook returned to work on February 3, 2015. Cook said she thought she informed someone that she was going to be gone on March 3, 2015, but DTE treated her as a no-call and no-show on that day. Artist sent Cook a letter terminating her employment on March 4, 2015.

In March 2016, Cook sued DTE. She alleged that DTE violated the Disabilities Civil Rights Act in various ways related to her use of medical leave and short-term disability, which included disparate treatment premised on her actual or perceived disability (Count I) and harassment (Count II). She also alleged that DTE retaliated against her (Count III) and created a hostile work environment (Count IV) in violation of the Disabilities Civil Rights Act because she exercised her right to use medical leave. Finally, she alleged that DTE failed to promote her on

the basis of her race in violation of the Elliott-Larsen Civil Rights Act (Count V), which Cook later agreed to dismiss.

DTE moved for summary disposition of Cook's remaining claims in March 2017. The trial court held a hearing on the motion in August 2017. After hearing arguments, the trial court agreed that DTE had established grounds for dismissing all Cook's claims. It determined that Cook failed to establish that she had a disability that was unrelated to her ability to perform the duties of her job, which precluded her claims under the Disabilities Civil Rights Act. It also determined that Cook failed to establish that she engaged in protected activity, let alone that there was a causal connection between her engagement in protected activity and her termination. It similarly opined that Cook failed to present any evidence that she was harassed as a result of her disability or that anyone made a discriminatory comment about her disability. As such, it dismissed her harassment and hostile environment claims too. Finally, the court stated that it was also dismissing Cook's claims for "all the other many reasons" cited in DTE's brief in support of its motion for summary disposition.

The trial court entered its order dismissing Cook's claims for the reasons stated on the record later that same month.

Cook then appealed in this Court.

## II. SUMMARY DISPOSITION

## A. STANDARD OF REVIEW

On appeal, Cook argues that she presented sufficient evidence to establish a question of fact on all four of her claims under the Disabilities Civil Rights Act. As such, she maintains that the trial court erred when it granted DTE's motion for summary disposition. This Court reviews de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009).

## B. DISCRIMINATION PREMISED ON ACTUAL DISABILITY

When reviewing a trial court's decision on a motion for summary disposition, this Court must review the moving party's motion in the same way that the trial court was obligated to review it. *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 440; 814 NW2d 670 (2012). This Court must first determine whether the moving party properly identified "the issues as to which the moving party believes there is no genuine issue as to any material fact." MCR 2.116(G)(4). The moving party must be specific enough to place the non-moving party on notice of the need to respond. *Barnard Mfg*, 285 Mich App at 369. The moving party must also support the "motion with affidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted." *Id.* at 369-370, citing MCR 2.116(G)(3). If the moving party adequately supports the motion, the burden shifts to the non-moving party to establish that a genuine issue of disputed fact exists. *Barnard Mfg*, 285 Mich App at 370.

In assessing a motion for summary disposition, courts must examine all the substantively admissible evidence proffered by the parties in the light most favorable to the non-moving party to determine whether it establishes a question of fact. *Maiden v Rozwood*, 461 Mich 109, 120-

121; 597 NW2d 817 (1999). A trial court should only grant a motion under MCR 2.116(C)(10) when the evidence properly before the trial court shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.*

The Legislature provided that employment without discrimination because of a disability is a civil right. MCL 37.1102(1). For that reason, an employer must accommodate a person with a disability for purposes of employment unless the accommodation would impose an undue hardship. MCL 37.1102(2). The Legislature also barred employers from engaging in certain discriminatory practices against persons with disabilities, stating that an "an employer shall not:"

> (a) Fail or refuse to hire, recruit, or promote an individual because of a disability or genetic information that is unrelated to the individual's ability to perform the duties of a particular job or position.

> (b) Discharge or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a disability or genetic information that is unrelated to the individual's ability to perform the duties of a particular job or position.

> (c) Limit, segregate, or classify an employee or applicant for employment in a way which deprives or tends to deprive an individual of employment opportunities or otherwise adversely affects the status of an employee because of a disability or genetic information that is unrelated to the individual's ability to perform the duties of a particular job or position. [MCL 37.1202(1).]

"The purpose of the act is to mandate the employment of the handicapped to the fullest extent reasonably possible." *Peden v Detroit*, 470 Mich 195, 203; 680 NW2d 857 (2004) (quotation marks and citation omitted). To prove a violation of the Disabilities Civil Rights Act, Cook must show: (1) that she was disabled, as defined in the act, (2) that her disability was unrelated to her ability to perform her job duties, and (3) that DTE discriminated against her in one of the ways prohibited under the act. *Id.* at 204.

The Legislature defined a disability for purposes of the article involving employers to mean a "determinable physical or mental characteristic of an individual" that "substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job or position . . . ." MCL 37.1103(d)(*i*)(A). A disability is unrelated to an individual's ability if the disability—with or without accommodation—does not prevent the individual from performing the duties of a particular job or position. MCL 37.1103(l). Thus, the Disabilities Civil Rights Act "generally protects only against discrimination based on physical or mental disabilities that substantially limit a major life activity of the disabled individual, but that, with or without accommodation, do not prevent the disabled individual from performing the duties of a particular job." *Peden*, 470 Mich at 204.

DTE argued in its motion for summary disposition that Cook's claims under the Disabilities Civil Rights Act failed as a matter of law because she alleged in her complaint that her disability affected her ability to perform her duties and because she represented to the Social Security Administration and the Michigan Unemployment Agency that she was totally disabled

and unable to work in any capacity. DTE supported its motion with citations to Cook's complaint, a letter from the Social Security Administration, and a letter from Cook's physician. It also submitted the notice of determination from the Michigan Unemployment Agency, and cited Cook's own testimony in which she stated that she applied for unemployment but that her request was denied because she informed the agency that she was unable to work.

The evidence DTE presented established that Cook was totally disabled and unable to perform any job duties during the relevant time period. A condition related to an individual's ability to perform his or her duties is not a disability within the meaning of the Disabilities Civil Rights Act. Consequently, if DTE's evidence were left unrebutted, it would be entitled to summary disposition. See MCL 37.1103(d)(*i*)(A); *Tranker v Figgie Int'l (On Remand)*, 231 Mich App 115, 125; 585 NW2d 337 (1998) (stating that the plaintiff was not entitled to relief because he admitted that he was unable to perform his job duties as a result of his condition). Once DTE properly asserted and supported its motion in this respect, Cook had the obligation to present evidence that established a question of fact as to whether she had a disability as defined under the act. *Barnard Mfg*, 285 Mich App at 370.

In response to DTE's motion, Cook argued that she had numerous preexisting conditions—diabetes, peripheral blockage, tendinitis, carpal tunnel, neck and back injury, pain, and wrist surgery—that substantially limited her ability to perform some major life activities. She indicated that these conditions existed from 2002 to 2015 and did not prevent her from performing her job duties. She cited three exhibits to establish that she had a condition that amounted to a disability: two performance evaluations and a Family Medical Leave request to have physical therapy in July 2010. This response was insufficient to establish a question of fact as to whether Cook had a disability within the meaning of MCL 37.1103(d)(*i*)(A).

Cook discussed her various medical conditions in her statement of the facts and cited evidence to support the existence of those conditions. She did not, however, discuss those conditions in that portion of her response in which she argued that there was a genuine issue of fact as to whether she had a qualifying disability. She further did not cite any evidence that permitted an inference that her conditions substantially limited one or more of her major life activities. She also did not identify the point at which she qualified as disabled under the applicable law. She did not discuss the evidence that she had had a stroke and that after her stroke she claimed that she was unable to return to work. Thus, she did not establish that, even if she eventually did have a condition that affected her ability to perform her job duties, she nevertheless had a qualifying disability before that point that could serve as the underlying disability involved in her discrimination claim.

Cook also did not rectify her failure to establish a question of fact at the hearing on DTE's motion. See *Barnard Mfg*, 285 Mich App at 380 (noting that the non-moving party may cite evidence orally at the hearing on the motion for summary disposition). Her counsel informed the trial court that Cook had "various disabilities," which included "diabetes, peripheral blockage, tendinitis, carpal tunnel, neck and back injuries, and pain," and asserted that those "disabilities were unrelated" to her ability to perform her work, but she failed to cite any record evidence to support the assertion that those conditions actually met the act's definition of a disability or that the conditions were the relevant disability involved in DTE's allegedly unlawful discrimination. Cook's trial counsel only cited Cook's performance evaluations and e-mails that

-6-

showed that Bartell was generally aware that Cook had doctor's appointments and physical therapy related to her back, shoulder, and wrist. She also again failed to address Cook's stroke, and the evidence that Cook claimed to be totally disabled and unable to work after the stroke.

Cook's response to DTE's motion for summary disposition was inadequate to establish a question of fact as to whether she had a determinable physical characteristic that substantially limited one or more of her major life activities and which was unrelated to her ability to perform her job duties. *Peden*, 470 Mich at 204. The evidence that Cook actually cited in response to DTE's claim that Cook was totally disabled and unable to work during the relevant timeframe, even when viewed in the light most favorable to her, established only that she had some problems with her back, neck, and wrist that required occasional doctor's appointments and therapy and which generally did not preclude her from working for some years before the events at issue. Merely asserting that Cook was "in a protected class, with multiple disabilities" that were "pre-stroke", did not establish that her physical ailments qualified as disabilities under the Disabilities Civil Rights Act and, even if those ailments qualified as disabilities, did not establish that those were the relevant disabilities involved in DTE's allegedly unlawful discrimination. Her failure to cite and discuss evidence that established a question of fact on that element essentially left DTE's evidence unrebutted. See *Barnard Mfg*, 285 Mich App at 380-381 (stating that this Court's review of a decision on a motion for summary disposition is limited to the evidence actually raised and considered before the trial court). Consequently, the trial court did not err when it determined that DTE established grounds for summary disposition. See *id.* at 375 (concluding that the trial court properly granted summary disposition where the non-moving party left the moving party's evidence completely unrebutted).

On appeal, although Cook argues that she established a question of fact as to whether she had a qualifying disability, she merely restates the same arguments that she presented to the trial court in her amended response to DTE's motion for summary disposition. Therefore, on the record before this Court, the trial court did not err when granted DTE's motion for summary disposition on the ground that Cook failed to establish a question of fact as to whether she had a disability within the meaning of the Disabilities Civil Rights Act. *Id.* at 375.

## C. DISCRIMINATION PREMISED ON PERCEIVED DISABILITY

Cook similarly failed to establish a question of fact as to whether DTE regarded her as disabled.

The Legislature defined the term disability to include those situations were an individual is "regarded as having a determinable physical or mental characteristic described" under MCL 37.1103(d)(*i*). MCL 37.1103(d)(*iii*). As such, an employer can violate MCL 37.1202 by engaging in the practices prohibited under that section because the employer "regarded" a person as having a disability, even if the person did not in fact have a determinable physical or mental characteristic described under MCL 37.1103(d)(*i*). See *Michalski v Bar-Levav*, 463 Mich 723, 731-732; 625 NW2d 754 (2001). To establish a claim under that section, Cook had to show that (1) DTE regarded her as having a determinable physical or mental characteristic, (2) that DTE regarded the characteristic as substantially limiting one or more of Cook's major life activities, and that (3) DTE regarded the characteristic as being unrelated either to Cook's ability to perform her duties. *Id.* at 732.

In her amended brief and at oral arguments on DTE's motion, Cook argued that there was a question of fact as to whether DTE perceived her to be disabled; however, she did not proffer any evidence to establish that proposition. During oral arguments she did cite e-mails between Cook and Bartell for the proposition that Bartell knew that she had taken time off for doctor's appointments, physical therapy, and surgery, but the e-mails—at best—established that Bartell knew that Cook occasionally suffered from some physical impairments. But evidence that Bartell knew that Cook had episodic physical impairments did not establish a question of fact as to whether DTE regarded Cook as disabled. See *Chiles*, 238 Mich App at 479-480 (explaining that temporary, intermittent, or episodic impairments—even if they require extensive leave from work—do not constitute disabilities within the meaning of the act). Moreover, since the decision in *Chiles*, our Supreme Court has clarified that a plaintiff must establish that the employer regarded the plaintiff as having a determinable physical or mental characteristic that substantially limited one or more major life activities *and* that the employer regarded the characteristic as being *unrelated* to the employee's ability to perform his or her job. See *Michalski*, 463 Mich at 732. Cook argued before the trial court—and continues to argue on appeal—that the evidence showed that DTE regarded Cook's physical impairments as having "disabled" her and rendered her "unable to perform her job" or that she was otherwise "disabled from work," which, she claimed, was a "major life activity."

By arguing that the evidence showed that DTE thought she had an impairment that affected her ability to perform her job, Cook conceded that she could not show that DTE regarded her as having a disability within the meaning of MCL 37.1103(d)(*i*)(A); more specifically, she conceded that the evidence showed that DTE did not regard her characteristics to be unrelated to her ability to perform her job. See *Michalski*, 463 Mich at 732. Consequently, the trial court did not err when determined that Cook failed to establish a genuine issue of material fact on one or more elements of her claim of disability discrimination premised on the allegation that DTE regarded her as disabled. See *Quinto v Cross & Peters Co*, 451 Mich 358, 362-363; 547 NW2d 314 (1996).

### D. HARASSMENT AND HOSTILE WORK ENVIRONMENT

This Court has held that "harassment or hostile work environment" claims premised on a person's disability are actionable under Michigan law. See *Downey v Charlevoix Co Bd of Rd Comm'rs*, 227 Mich App 621, 628; 576 NW2d 712 (1998). To establish a prima facie case of hostile work environment, Cook had to show: (1) that she belonged to a protected group, (2) that she was subjected to communication or conduct on the basis of the protected status, (3) that she was subjected to unwelcome conduct or communication on the basis of her protected status, (4) that the unwelcome conduct or communication was intended to, or in fact did, interfere substantially with her employment or created an intimidating, hostile, or offensive work environment, and (5) respondeat superior. *Id.* at 629.

DTE did not contest whether Cook belonged to a protected group for purposes of its motion to dismiss Cook's harassment and hostile work environment claims. Rather, it argued that Cook could not establish that she was subjected to unwelcome conduct or comments that were so severe that the conduct or communications substantially interfered with her work environment. It also argued that Cook could not establish respondeat superior.

Cook responded that the evidence showed that DTE subjected her to unwelcome conduct by subjecting her to disciplinary measures based in part on her absences and by forcing her to return to work before she was ready. Evidence that DTE subjected Cook to disciplinary measures does not, however, standing alone amount to unwelcome conduct or communication "on the basis of the protected status." *Downey*, 227 Mich App at 629. Cook testified that she never heard, or had anyone tell her about, any disparaging or discriminatory remarks about persons with disabilities at work. She also stated that she had no reason to believe that any of her supervisors would discriminate against her on the basis of disability. In the absence of such evidence, Cook could not show that DTE's disciplinary measures amounted to unwelcome conduct or communication on the basis of her status as a disabled person. See *id.*

Cook also failed to establish that the disciplinary measures were intended to, or in fact did, interfere substantially with her employment or created an intimidating, hostile, or offensive work environment. *Id.* To establish this element, Cook had to present evidence that her supervisors or coworkers created an atmosphere "so infused with hostility" toward disabled persons that the atmosphere altered her conditions of employment. *Radtke v Everett*, 442 Mich 368, 385; 501 NW2d 155 (1993)(citation omitted). The standard is one of reasonableness: "whether a hostile work environment existed shall be determined by whether a reasonable person, in the totality of the circumstances, would have perceived the conduct at issue as substantially interfering with the plaintiff's employment or having the purpose or effect of creating an intimidating, hostile, or offensive employment environment." *Id.* at 394. Cook failed to identify any evidence that her supervisor's disciplinary measures were intended to interfere with her employment or had the purpose or effect of creating an intimidating, hostile, or offensive environment as perceived by a reasonable person. Accordingly, she failed to establish that element of her hostile work environment claim as well. *Downey*, 227 Mich App at 629.

Finally, Cook failed to present evidence that DTE knew or should have known that Cook's supervisors were harassing her and failed to take prompt remedial action sufficient to establish respondeat superior. See *Radtke*, 442 Mich at 396-397. Cook asserted that she told her supervisor that she felt that she was forced to return to work before she was ready to do so for the sole purpose of firing her. Even assuming that Cook informed DTE that she felt that she had been forced to return to work for the sole purpose of terminating her employment, that statement did not constitute evidence that DTE knew or should have known that she was being subjected to a hostile work environment on the basis of a disability. Cook failed to present any evidence that she complained to anyone at DTE that she was being subject to unwanted conduct or communications regarding her disability and that the actions created a hostile work environment.

The trial court did not err when it granted DTE's motion for summary disposition on Cook's harassment and hostile work environment claims. See *Quinto*, 451 Mich at 362-363.

E.  UNLAWFUL RETALIATION

In addition to the practices prohibited under MCL 37.1202, the Legislature prohibited any person or persons from retaliating or discriminating "against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act." MCL 37.1602(a). To establish her claim of retaliation, Cook had to show: (1) that she engaged

in an activity protected under the statute, (2) that DTE knew she was engaging in a protected activity, (3) that DTE took an adverse employment action against Cook, and (4) that there was a causal connection between the protected activity and the adverse employment action. *Aho v Dep't of Corrections*, 263 Mich App 281, 288-289; 688 NW2d 104 (2004). "To establish a causal connection, a plaintiff must demonstrate that his participation in the protected activity was a significant factor in the employer's adverse employment action, not merely that there was a causal link between the two events." *Id.* at 289 (quotation marks and citation omitted).

In its motion for summary disposition, DTE argued that Cook could not show that she engaged in protected activity or that DTE's decision to terminate her employment had a causal relationship to any potentially protected activity. In response, Cook argued that the evidence showed that she opposed a violation of the Disabilities Civil Rights Act and that DTE terminated her employment in retaliation for doing so. Specifically, in her response to DTE's motion for summary disposition, Cook cited her own testimony in which she claimed to have "told everybody" that "they forced [her] back to terminate [her]."

Cook's testimony did not establish that she was engaged in activity protected under MCL 37.1602(a). There was no evidence that Cook had made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under the Disabilities Civil Rights Act. See MCL 37.1602(a). Moreover, telling "everybody" that DTE forced her to return to work because it wanted to terminate her employment, at best, established that she was opposed to DTE's decision to inform her that she had to return to work. Nothing about the statement permitted an inference that Cook felt that DTE's decision violated the Disabilities Civil Rights Act and that she was speaking out in opposition to that violation. Cook also failed to present any evidence permitting an inference that there was causal connection between DTE's decision to terminate her employment and her statement protesting her recall to work. Because Cook failed to present any evidence to establish that she engaged in activity protected by MCL 37.1602(a) or that DTE terminated her employment because she complained about being recalled to work, she failed to establish the elements of a prima facie case of retaliation. The trial court properly dismissed her claim of retaliation on that ground. See *Quinto*, 451 Mich at 362-363.

## F. PRETEXT

Had Cook established a prima facie case of discrimination or retaliation under the Disabilities Civil Rights Act, the burden would then have shifted to DTE to articulate a legitimate business reason for terminating her employment. See *Aho*, 263 Mich App at 289. DTE argued and presented evidence that it terminated Cook's employment because of her substandard performance over a period of months culminating in the no-call and no-show after DTE recalled her to work. For that reason, the burden shifted back to Cook, and she had to present evidence that established a question of fact as to whether the reason proffered by DTE was only a pretext for unlawful discrimination. *Id.*

Cook contended that DTE's proffered reason was "untrue;" she supported that claim by alleging that DTE did not follow its own disciplinary policies. Cook did not present any evidence that DTE's stated reason had no basis in fact or that the stated reason did not justify the decision. She also did not present any evidence permitting an inference that her termination was motivated by a discriminatory animus. See *Campbell v Dep't of Human Servs*, 286 Mich App

-10-

230, 241; 780 NW2d 586 (2009) (stating the ways in which an employee can establish pretext). Cook did not analyze DTE's disciplinary policies and did not state how the disciplinary process that her supervisors actually used differed from the policies stated in DTE's manuals. She also did not explain how the differences gave rise to an inference of pretext. Instead, she merely asserted that DTE's failure to use some other disciplinary procedure and the shifting statements by the department manager, Karoline Sheldon, concerning the grounds for termination permitted an inference that DTE's stated reason was pretext.

Sheldon did not offer alternate or contradictory bases for Cook's termination. Rather, Sheldon stated they decided to terminate Cook after her no-call, no-show because of her past performance issues; that is, she testified that the no-call, no-show precipitated the decision, but that Cook's performance issues were the reason she was not given further opportunities.

Because Cook failed to present evidence that established a question of fact as to whether DTE's proffered reason for terminating Cook's employment was mere pretext for unlawful discrimination or retaliation under the Disabilities Rights Act, the trial court did not err to the extent that it dismissed her claims on that basis too. See *Maiden*, 461 Mich at 120.

## III. CONCLUSION

On the record before it, the trial court did not err when it dismissed each of Cook's claims under the Disabilities Civil Rights Act.

We affirm. As the prevailing party, DTE may tax its costs. MCR 7.219(A).

/s/ Michael J. Kelly
/s/ Jane E. Markey
/s/ Karen M. Fort Hood

-11-

# Court of Appeals, State of Michigan

# ORDER

Karen Camil Cook v DTE Energy Corporate Services LLC

Docket No.    339879

LC No.    16-002930-CD

Michael J. Kelly
Presiding Judge

Jane E. Markey

Karen M. Fort Hood
Judges

The Court orders that the September 25, 2018 opinion is hereby VACATED, and a new opinion is attached. The new opinion corrects a drafting error in the second full paragraph on page 7; the opinion is otherwise unchanged.

/s/ Michael J. Kelly

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

October 2, 2018
Date

Chief Clerk