NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0164n.06

Case No. 21-2791

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| CHAZ WALLS, | ) | |
| Plaintiff - Appellant, | ) ) | **FILED** |
| | ) | Apr 19, 2022 |
| v. | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| GRAPHIC PACKAGING CORPORATION, | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| Defendant - Appellee. | ) | MICHIGAN |
| | ) | |
| | ) | |

Before: BATCHELDER, COLE, and GIBBONS, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge.  Shortly after returning to work at Graphic Packaging Corporation ("Graphic Packaging") from Family Medical Leave Act ("FMLA") continuous leave, Chaz Walls realized he had missed a doctor's appointment.  Walls did not previously inform Graphic Packaging of the appointment or request time off to attend it.  Referencing his FMLA intermittent leave, Walls informed his supervisor he needed to leave his scheduled shift four hours early to go to the doctor's office.  Although his supervisor was unable to find anyone to cover the remainder of his shift, Walls left the premises.  Graphic Packaging terminated his employment three days later.  Walls sued, alleging violations of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), Persons with Disabilities Civil Rights Act ("PWDCRA"), and public policy.  The district court granted summary judgment to Graphic Packaging.  We affirm.

**I**

Graphic Packaging, a paperboard manufacturing and fabrication company, hired Walls to work at a Michigan manufacturing facility in July 2014. A collective bargaining agreement ("CBA") applied to the employment relationship between Graphic Packaging and Walls, a member of the United Steelworkers Union Local 2-1010.

Walls suffers from irritable bowel syndrome ("IBS"). He was granted FMLA intermittent leave from May 8, 2017 to August 5, 2017, and FMLA continuous leave from May 13, 2017 to June 24, 2017. Walls's intermittent leave determination letter states: "When planning foreseeable medical treatment relating to your leave, you must consult with your Supervisor and/or Human Resources representative and make every reasonable effort to provide notification for an absence at least 30 days in advance, or as soon as practicable depending on your individual circumstances." DE 16-3, May FMLA Approval, Page ID 342.

Before his continuous leave expired, Walls returned to work with doctor's orders for frequent restroom breaks and days off between IBS flareups. Graphic Packaging prohibited employees from leaving their machine unattended unless they had coverage from another employee. Although he was occasionally asked to wait before using the restroom for coverage purposes, supervisors never told Walls that he could not take restroom breaks, and he was never disciplined for using the restroom. During his employment, he never told his supervisor or Human Resources that he was getting insufficient restroom breaks, nor did he file any grievances.

On June 13, 2017, Walls received a voicemail from his doctor's office stating he had missed an appointment and he needed to report to the office to "[s]ign paperwork to not get

dropped as a patient."[1] DE 16-15, Walls Dep., Page ID 405. The office wanted him to come "as soon as possible," which Walls understood to mean before the office closed at 5:00 p.m. *Id.* Walls had forgotten about the appointment and, although it was scheduled several weeks prior, did not inform anyone at Graphic Packaging about the appointment. Around 9:00 a.m., Walls called his supervisor, Lindsay Fisher, requesting to leave at 3:00 p.m., four hours early, to go to the doctor's office. Walls informed Fisher that he missed an appointment and had "important issues with [his] health" that he "ha[d] to take care of." DE 17-4, Arbitration Tr., Page ID 525. Walls and Fisher spoke at least three times throughout the day, but Fisher continuously told Walls she could not find anyone to cover his shift and he could not leave. Walls did not tell Fisher that he was sick or feeling ill, just that he "needed to fill out paperwork." *Id.* at 519.

At 3:00 p.m., Fisher came to Walls's workstation as he was preparing to leave and again told him she was unable to find coverage. Walls told her he had to leave and he "had FMLA." *Id.* at 525–26. The parties dispute Fisher's response. Walls claims Fisher first told him he "had to stay," but later told him "okay, then, leave." *Id.* at 525–26. Walls's coworker, Matthew Williams, was standing close to Walls during the conversation and testified that Fisher told Walls "well, just leave then." *Id.* at 523. Fisher denied giving Walls permission to leave, testifying she told him "I don't have anybody to cover you. You can't leave." *Id.* at 520; *see also* DE 16-6, Fisher Email, Page ID 354. Whatever Fisher's response, Walls clocked out, "call[ed] in for FMLA," and went to the doctor's office. DE 17-4, Arbitration Tr., Page ID 525. Shortly after Walls's departure,

---

[1] Jeffrey Carroll, the corporate representative for Walls's doctor's office, stated the office "does not have a practice of requiring patients who miss appointments to fill out any type of paperwork in order to remain on as patients." DE 16-5, Carroll Aff., Page ID 351. Carroll asserted no one from the doctor's office informed Walls that he needed to fill out paperwork to remain a patient, and the office has no record of paperwork being completed by Walls on June 13.

Fisher emailed several individuals at Graphic Packaging to report that Walls left his shift early without coverage.

Jennifer Strey, Human Resources Manager at Graphic Packaging, met with Walls the following day as part of her investigation into the incident. Walls did not tell Strey that he had a medical condition requiring him to leave. After telling her he left to complete paperwork, Walls "acknowledged the fact that you can't just use [FMLA leave] for any absence" and that this was an improper use of FMLA leave. *Id.* at 521–22. Graphic Packaging suspended Walls following the meeting. Two days later, Graphic Packaging discharged him for "[l]eaving the premises while on duty without permission of the supervisor," which is listed as a cause for discharge in the CBA. DE 16-2, Walls Discipline Slips, Page ID 339; DE 16-8, CBA, Page ID 360.

The Union represented Walls in an arbitration grievance proceeding. The arbitrator sustained the termination and denied the grievance. Walls sued Graphic Packaging in Michigan state court in September 2019, alleging hostile workplace environment and retaliation under the ELCRA, retaliation and discrimination under the PWDCRA, and wrongful discharge in violation of Michigan public policy.[2] Graphic Packaging removed the case to the Western District of Michigan pursuant to 28 U.S.C. §§ 1332(a)(1) and 1441(a). Walls abandoned both of his claims under the ELCRA, and the district court granted summary judgment to Graphic Packaging on Walls's remaining claims. Walls timely appealed.

## II

We review a district court's grant of summary judgment de novo. *El-Khalil v. Oakwood Healthcare, Inc.*, 23 F.4th 633, 634 (6th Cir. 2022). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

---

[2] Walls did not bring any claims under FMLA, presumably because the two-year statute of limitations had already expired. *See* 29 U.S.C. § 2617(c)(1); DE 34, Op., Page ID 749.

judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Id.* at 252. While we draw all justifiable inferences in favor of the nonmovant, we do not determine credibility or weigh the evidence. *Id.* at 255.

### III

Walls argues the district court erred in finding he did not establish a prima facie case of retaliation and in finding Graphic Packaging's reason for his discharge legitimate and nondiscriminatory.[3] The PWDCRA prohibits employers from retaliating or discriminating against an employee who either has "opposed a violation" of the act or "made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing" under the act. M.C.L. § 37.1602(a). The PWDCRA also makes it unlawful for employers to "[d]ischarge or otherwise discriminate against" an employee "because of a disability . . . that is unrelated to the individual's ability to perform the duties of a particular job or position." M.C.L. § 37.1202(b). Because Walls cannot establish a prima facie case of retaliation or that Graphic Packaging's legitimate, nondiscriminatory reason for his termination was pretextual, we affirm.

### A

To establish a prima facie case of retaliation under the PWDCRA, Walls must show: "(1) that he engaged in a protected activity, (2) that this was known by the defendant, (3) that the defendant took an employment action adverse to the plaintiff, and (4) that there was a causal

---

[3] On appeal, Walls does not address the dismissal of his wrongful discharge claim under Michigan public policy, thus that claim is waived. *See Buziashvili v. Inman*, 106 F.3d 709, 719 (6th Cir. 1997).

connection between the protected activity and the adverse employment action." *Aho v. Dep't of Corrs.*, 688 N.W.2d 104, 108 (Mich. Ct. App. 2004). The district court found that Walls did not engage in a protected activity. Walls argues "he presented sufficient evidence to make out a prima facie case" without identifying a protected activity, instead arguing that Graphic Packaging's proffered legitimate reason for his discharge was pretextual. CA6 R. 20, Appellant Br., at 12–16.

Walls can establish that he engaged in a protected activity by showing either that (1) he opposed a violation of the PWDCRA, or (2) he made a charge, filed a complaint, or testified, assisted, or participated in an investigation, proceeding, or hearing under the PWDCRA. *See* M.C.L. § 37.1602(a); *see also Bachman v. Swan Harbour Assocs.*, 653 N.W.2d 415, 437 (Mich. Ct. App. 2002). Walls does not put forth evidence that he opposed a violation of the act, and he did not file a complaint or testify, assist, or participate in an investigation, proceeding, or hearing. We must therefore determine whether his conduct amounted to a charge made under the PWDCRA.

While "[a]n employee need not specifically cite the [PWDCRA] when marking a charge under the act[,] . . . the employee must do more than generally assert unfair treatment." *Barrett v. Kirtland Cmty. Coll.*, 628 N.W.2d 63, 72 (Mich. Ct. App. 2001). To constitute protected activity, the "charge must clearly convey to an objective employer that the employee is raising the specter of a claim of unlawful discrimination pursuant to the [PWDCRA]." *Id.*; *see also Mitan v. Neiman Marcus*, 613 N.W.2d 415, 416 (Mich. Ct. App. 2000) (explaining that a plaintiff must at least "suggest or imply that the alleged job discrimination was related to her disability"). Merely requesting an accommodation is not a protected activity. *Bachman*, 653 N.W.2d at 437–38.

Walls requested and was granted FMLA leave and referenced his FMLA leave in his same-day request to leave early on June 13, 2017, but these acts do not amount to making a charge of

discrimination under the PWDCRA.  During his employment, Walls never told his supervisor or Human Resources orally or in writing that he was not getting restroom breaks he needed due to his IBS.  Nor did he file a grievance.  Walls did not "clearly convey" to Graphic Packaging that he was being discriminated against on the basis of a disability.  *Barrett*, 628 N.W.2d at 72.  Since Walls did not engage in a protected activity, he cannot establish a prima facie case of retaliation under the PWDCRA.[4]

**B**

To establish a prima facie case of discrimination under the PWDCRA, Walls must show: "(1) that he is disabled as defined in the act, (2) that the disability is unrelated to his ability to perform his job duties, and (3) that he has been discriminated against in one of the ways delineated in the statute."  *Peden v. City of Detroit*, 680 N.W.2d 857, 863 (Mich. 2004) (quotation omitted) (cleaned up).  The district court assumed that Walls established a prima facie case of discrimination.  Graphic Packaging does not challenge that assumption, instead arguing Walls cannot establish pretext.  We therefore assume, without deciding, that Walls established a prima facie case of unlawful discrimination.  The burden thus shifts to Graphic Packaging "to articulate a legitimate business reason for the decision."  *Jewett v. Mesick Consol. Sch. Dist.*, 957 N.W.2d 377, 385 (Mich. Ct. App. 2020).  If Graphic Packaging provides such a reason, the burden shifts back to Walls to establish that the proffered reason is pretextual.  *Id.*  Walls argues the district court erred in finding Graphic Packaging's proffered reason legitimate because a genuine issue of material fact exists as to whether Walls had permission to leave.

---

[4] In his reply brief, Walls argues for the first time in this litigation that Graphic Packaging is liable for retaliation because it discharged him based on a "mistaken perception that Walls walked off the job without FMLA or improperly used FMLA."  CA6 R. 25, Reply Br., at 1.  Walls did not raise this theory of liability to the district court or in his principal brief.  We therefore cannot consider the argument.  *See Armstrong v. City of Melvindale*, 432 F.3d 695, 700 (6th Cir. 2006) ("[T]he failure to present an issue to the district court forfeits the right to have the argument addressed on appeal."); *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 522 (6th Cir. 2019) ("[A]n appellant forfeits an argument that he fails to raise in his opening brief.").

The district court found that Walls was terminated for leaving work without permission. Walls asserts the district court reached this conclusion because it made inferences in favor of Graphic Packaging, the moving party, in conflict with the court's role at the summary judgment stage. The key question, however, concerns Graphic Packaging's honest belief at the time of its decision. *See Jewett*, 957 N.W.2d at 386 (finding an employer's proffered reason of performance deficiencies legitimate, even though "[t]here may be a genuine question of fact whether plaintiff's performance issues were real"). Even viewing the evidence in the light most favorable to Walls, Graphic Packaging has put forth sufficient evidence to satisfy its burden. Fisher emailed members of the management team within two hours of Walls's departure, explaining that Walls "walked off the job." DE 16-6, Fisher Email, Page ID 354. Strey met with Walls the following day to address "him walking off the job." DE 17-3, Strey Dep., Page ID 491. Two days later, Graphic Packaging discharged Walls for "[l]eaving the premises while on duty without permission of the supervisor," DE 16-2, Walls Discipline Slips, Page ID 339, which is a cause for discharge under the terms of the parties' CBA. Graphic Packaging made its termination decision based on its belief that Walls left without permission, which is a legitimate, nondiscriminatory reason for his termination.

Walls can establish Graphic Packaging's reason for his discharge is pretextual by showing the reason (1) had no basis in fact, (2) was not the actual reason for his discharge, or (3) was insufficient to justify the discharge. *Jewett*, 957 N.W.2d at 385. Pretext can be established with direct or indirect evidence, but Walls must ultimately "establish a causal connection between the discriminatory animus and the adverse employment decision." *Id.* at 386. Walls argues that his disability was the actual reason for his discharge for multiple reasons, including suspicious timing of his discharge with his return from FMLA continuous leave and the fact that Graphic Packaging knew Walls needed to leave for a doctor's appointment and fired him for leaving for the

appointment. While Walls was fired within one month of returning from his continuous FMLA leave, his decision to leave the premises without permission was certainly an intervening event. Walls mentioned FMLA to Fisher on the day of the incident and Strey discussed the proper use of FMLA leave with Walls the following day, but there is no indication that Graphic Packaging made its decision for any reason other than its belief that Walls left the premises without permission. "An honest belief, even if ultimately found to be objectively incorrect or improvident, precludes a finding of pretext or bad faith." *Jewett*, 957 N.W.2d at 386. Walls offers no evidence suggesting that Graphic Packaging made its decision with discriminatory animus and thus cannot establish pretext.

## IV

Walls cannot establish a prima facie case of discriminatory retaliation or that Graphic Packaging's legitimate business reason for his discharge is pretextual. We affirm.