*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SANDRA ZIOTS,

        Plaintiff-Appellant,

v

PROMEDICA EMPLOYMENT SERVICES, LLC,
formerly known as HEARTLAND EMPLOYMENT
SERVICES, LLC,

        Defendant-Appellee.

UNPUBLISHED
April 25, 2024

No. 365302
Bay Circuit Court
LC No. 22-003082-CZ

Before: M. J. KELLY, P.J., and JANSEN and MURRAY, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order dismissing plaintiff's claims under the Worker's Disability Compensation Act (WDCA), MCL 418.101 *et seq.*, and the Persons with Disabilities Civil Rights Act (PWDCRA), MCL 37.1101 *et seq.*, under MCR 2.116(C)(10) (no genuine issue of material fact). We affirm.

Defendant contracts to have its employees provide hospice care to patients residing at Bay County Medical Care Facility. On September 3, 2019, defendant hired plaintiff to work as a full-time hospice certified nursing assistant at Bay County Medical. Plaintiff provided care to two or three hospice patients per week on average, in facilities and inside patients' homes, and was on site at least three times a week. Her duties included carrying out nurses' instructions and assisting patients with eating, hygiene, and mobility. Plaintiff's performance evaluations revealed that she performed her job duties in a normally satisfactory, and occasionally above-satisfactory, manner.

Defendant was self-insured for workers'-compensation claims, with money set aside in its budget to pay such benefits. Defendant had two policies governing alcohol-related tests to be performed on its employees. One concerned "Substance Abuse," and prohibited employees from being under the influence of alcohol while on defendant's premises and while otherwise conducting business for defendant. According to this policy, alcohol testing on employees was permitted for all new hires and in response to reasonable suspicion or probable cause. According

-1-

to the policy, "[t]he company tests for alcohol use in reasonable suspicion/probable cause situations," and that "[a] positive alcohol test is based on the federal alcohol testing regulations."

Defendant's other pertinent policy was entitled "Reasonable Suspicion/Probable Cause Drug and Alcohol Testing," and required a supervisor to document "the circumstances giving reasonable cause to believe there has been drug or alcohol use." According to this policy, after reasonable cause was established, a supervisor was to arrange for drug or alcohol testing at a designated collection site, and to escort the employee to that location, while maintaining "continual observation of the employee" until the person responsible for administering the test took over. Under this policy, the employee was entitled to challenge the positive test result and request a second test of the sample.

Plaintiff testified that, on January 27, 2020, she arrived at Bay County Medical "to service hospice patients" at approximately 7:30 a.m., and that she and another certified nursing assistant physically moved a patient wearing a gait belt after the patient's shower at approximately 8:00 a.m. According to plaintiff, the other nursing assistant was to hold onto the patient's gait belt to stabilize the patient while plaintiff helped the patient dress, but failed to manipulate the gait belt effectively, and the patient fell upon plaintiff, injuring plaintiff's back and right hip. Plaintiff testified that she "took the resident back to her room, and when [she] went to bend down, [her] back was shooting, having pain," such that she was not "able to bend." Plaintiff reported her injury to a charge nurse at Bay County Medical, who provided plaintiff with an incident report, which plaintiff completed, and instructed plaintiff to proceed to North Pine Clinic. Plaintiff drove herself to North Pine Clinic, arriving at approximately 8:45 a.m. Plaintiff remained in her car for a time because she said she was in too much pain to exit the vehicle.

Plaintiff testified that when she entered North Pine Clinic, she provided the paperwork from Bay County Medical to the receptionist, Nichol Raymond, and asked to use the restroom, upon which Raymond escorted her to the restroom while handing her a cup and asking her to provide a urine sample. According to plaintiff, after providing the sample, Raymond escorted plaintiff into an examination room, where Raymond presented her with an evidential breath test device (EBT), and asked plaintiff to take a deep breath and exhale into it. After she complied with Raymond's instructions, Raymond left the room "for a few minutes," then returned to the room with the EBT machine and instructed plaintiff to repeat the exercise, which she did. Plaintiff estimated that the time between the first and the second test was "maybe 25 minutes." According to plaintiff, Raymond then left her in the exam room momentarily, then returned and informed her that she had "failed" the alcohol breath test. Plaintiff immediately protested that she had not been drinking and the test was not accurate. Raymond then informed her that three others had recently used the same machine and registered blood-alcohol levels of zero, and therefore "there [was] no way" plaintiff's results could have been a false reading. Plaintiff's test results were a blood-alcohol level of 0.043 at 9:45 a.m. and 0.015 at 10:00 a.m.

Raymond provided plaintiff with a document stating that she passed the drug test but failed the alcohol test, and after plaintiff again challenged the accuracy of the positive test results, Raymond reiterated that plaintiff did fail the test, and stated that Raymond was going to contact plaintiff's employer. A medical note from North Pine Clinic indicated that a person "from Bay county medical was notified [of plaintiff's positive alcohol test results] and stat[ed] [that] we are to instruct [plaintiff] to go to her place of employment right away."

-2-

While plaintiff waited for her boyfriend (now husband) to pick her up from North Pine Clinic, defendant's human resources administrator, Julie Rousse, called plaintiff and instructed her to immediately report to work for observation and to complete an investigative interview. However, plaintiff and her boyfriend first went to the Bay City Police Department in hopes of obtaining another breathalyzer test, but were informed that the department did not provide such service to the public. They then proceeded to Covenant HealthCare's MedExpress Bay City, an urgent care facility, and requested a breathalyzer test, which was administered, revealing a result of 0.00 at 12:04 p.m.

Plaintiff finally arrived at defendant's office at approximately 12:30 p.m., and was called into a meeting with Rousse and Barbara Montei, another human resources manager for defendant. They first discussed how plaintiff was injured at Bay County Medical, and then plaintiff's positive alcohol test results from North Pine Clinic. Plaintiff told them she had not been drinking and that the North Pine test was faulty, and then gave them the results from the test she took at Covenant.

Montei testified that she and Rousse discussed how plaintiff's alcohol results did not seem to make sense numerically, but reasoned that "a positive test was a positive test and then there was a lapse of time and [plaintiff] went to Covenant and that [test] was negative." Rousse testified that, although she otherwise "not have any basis to suggest that there was reasonable suspicion" that plaintiff was under the influence of alcohol when she was injured, she asked to receive the test results because North Pine Clinic had told her that plaintiff "was positive for alcohol in her system while she was working."

Plaintiff returned to Covenant and received treatment from a doctor who diagnosed her with sprains to her hip and back and restricted her work, calling for no bending, twisting, or lifting of more than 20 pounds, and further prescribed a muscle relaxant, a topical pain killer, and an analgesic. Plaintiff took a sick day the following day, January 28, 2020, because of her pain, and acknowledged that defendant had to schedule others to work in her place. On the following day plaintiff spoke with Rousse about her work restrictions, and told Rousse that she would be able to return to work the day after. Rousse told plaintiff that she needed to come in on January 30, 2020, "and do light duty at the office."

On January 30, 2020, plaintiff reported for work and again was called to meet with Rousse and Montei, who presented her with a "last chance agreement," which stated in relevant part as follows:

> I Sandra Ziots have voluntarily chosen to disclose my use of illegal drugs or abuse of legal drugs or alcohol. I acknowledge that but for this admission, I would be terminated for violation of Critical/Type A work rule commitment #9: Never use, sell, manufacture, transfer, possess, consume or be under the influence of illegal drugs or alcohol on the premises, during work time or in company vehicles.

The agreement further required plaintiff to contact defendant's employee-assistance program within 72 hours to undergo an assessment of the "problem," receive recommendations,

-3-

and share any information obtained from this program with defendant. The agreement additionally required plaintiff to "comply with all company policies" and "performance expectations":

> Employee will perform all job duties as assigned according to expectations of the job description and will notify supervisor immediately of any incident/injury. Employee will complete at the time of injury packet according to [defendant's] guidelines as directed by supervisor. Employee will not have any level of alcohol or be under the influence of drugs or alcohol while at work.

Plaintiff testified that Rousse and Montei told her that "if [she] didn't sign [the last-chance agreement], [she] would be fired," and that she repeatedly told them that she had not been drinking and that the EBT tests from North Pine were faulty. Plaintiff ultimately refused to sign the last-chance agreement as presented, and instead wrote, "I resign as [certified nursing assistant] for [defendant] due to not signing an alcohol assistance program as I was not drinking and am told I must resign" on the agreement, and signed it.

Plaintiff testified that defendant's workers' compensation paid the medical bills related to the January 2020 workplace injury. In February 2022, plaintiff commenced this action for retaliation in violation of the WDCA, and for discharge based on unlawful medical examination in violation of the PWDCRA. Plaintiff alleged that defendant retaliated against her by "constructively terminating her employment" after she filed a workers'-compensation claim and obtained necessary medical services for her work-related injury.

Defendant moved to dismiss plaintiff's claims under MCR 2.116(C)(7) (claim barred by release), (C)(8) (failure to state a claim), and (C)(10). With regard to plaintiff's claim for retaliation under the WDCA, defendant argued that there was no causal connection between plaintiff's injury and the last-chance agreement, and that plaintiff failed to prove that defendant's reasons for the last-chance agreement were pretextual. Plaintiff responded that she had established a prima facie case of retaliation under the WDCA, and that defendant failed to prove that it had an honest belief that plaintiff's positive alcohol test results accurately reflected her condition.

At the motion hearing, defendant argued as follows:

> You know, at North Pine, [plaintiff] was given two breathalyzer tests, which she failed. It's undisputed that my client, [defendant], did not order those tests or know about those tests . . . .

> \* \* \*

> [Defendant] did get the results. North Pine apparently faxed the positive results to [defendant], her employer. So, [defendant] had the results. They felt they had to do something.

> Again, this is someone with direct patient care responsibilities.

And [defendant] is her employer, whether the tests were flawed or not. Once they got word that she tested positive for alcohol twice, you know, they felt they had to do something.

Defendant further maintained that plaintiff had signed a release or waiver as part of her employment that would absolve defendant of any liability "arising from such tests including the testing process and procedures, analysis, and disclosure of the results." However, the trial court quickly noted that the waiver contained several conditions, and did not apply in this situation.

Defendant also asserted that there was no evidence that plaintiff had filed a workers'-compensation claim between her injury and being presented with the last-chance agreement three days later, or that Montei and Rousse knew if plaintiff had filed a workers'-compensation claim before they presented her with the last-chance agreement. Plaintiff's counsel insisted that plaintiff did file a workers'-compensation claim even though there was no evidence of it on the record, and, alternatively, that it was irrelevant whether she did so because it was enough that she suffered a workplace injury and was seeking to collect benefits.

Defendant further argued that the alcohol tests plaintiff was given were not considered a "medical test" as defined by the PWDCRA, and that, not only did defendant not order those tests, they were not administered "because they thought she had a disability or they wanted to see if she had a disability." The trial court agreed, and dismissed plaintiff's claim under the PWDCRA, stating "I don't think [defendant] ordered the test," and "I don't think it was a medical exam. I don't think there's any disability that the plaintiff had, or perceived disability."

Regarding plaintiff's retaliation claim under the WDCA, the trial court ruled as follows:

[T]here's no evidence that there was [a] Worker's Comp . . . case filed . . . or any claim made related to Worker's Compensation, and there's no factual issue regarding the causal connection.

They're close in time. Their decision was close in time as to the injury, and people can second guess the employer's interpretation of the test results, but they were confronted with evidence, some evidence, that the employee had been drinking while working, and the whole record is replete with the facts related to . . . the employer's belief that . . . there was evidence of the employee drinking, and . . . those are the only facts that exist that speak to the employer's motivation for offering the last chance agreement.

And as to the waiver issue, I'll deny the motion. I don't believe the waiver by its terms applies to the facts of this case. So, as to the waiver, I'll deny the motion but grant it under (C)(10) for Counts 1 and 2.

The court concluded as follows:

I don't think that was the thrust of . . . the motions here as to whether or not there had been an actual [workers'-compensation] claim filed . . . .

But in any event, there's nothing, no facts to show the causal connection here, and so I'll let my decision stand for what it is.

On appeal, plaintiff argues that she has established a prima facie case of retaliation under the WDCA, and that defendant could not have held an honest belief that the two alcohol tests administered by North Pine Clinic accurately indicated that she had alcohol in her system. We disagree.

We review a grant or denial of summary disposition de novo to determine if the moving party was entitled to judgment as a matter of law. See *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Under MCR 2.116(C)(10), the trial court considers "the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted or filed in the action to determine whether a genuine issue of any material fact exists to warrant a trial." *Wilcoxon v Minn Mining & Mfg Co*, 235 Mich App 347, 357-358; 597 NW2d 250 (1999) (quotation marks and citation omitted). "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Maiden*, 461 Mich at 120. A genuine issue of material fact exists when "reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

Under the WDCA,

A person shall not discharge an employee or in any manner discriminate against an employee because the employee filed a complaint or instituted or caused to be instituted a proceeding under this act or because of the exercise by the employee on behalf of himself or herself or others of a right afforded by this act. [MCL 418.301(13).]

To establish a prima facie case of retaliation under the WDCA, a plaintiff must show that he or she engaged in an activity protected by the WDCA, the employer knew of the protected activity, the employer took employment action adverse to the employee, and the adverse employment action and the plaintiff's protected activity were causally connected. *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 275; 826 NW2d 519 (2012).

With regard to the fourth requirement for proving retaliation, to establish causation the plaintiff must show that the protected activity was a "significant factor" in the employer's decision to take the adverse employment action. *Rymal v Baergen*, 262 Mich App 274, 303; 686 NW2d 241 (2004) (quotation marks and citation omitted). Although close timing alone is not sufficient to establish a causal connection, the existence of a close temporal relationship is evidence of such a connection. *West v Gen Motors Corp*, 469 Mich 177, 186; 665 NW2d 468 (2003). Here, plaintiff argues causation on the basis of the timing of her protected activity on January 27, 2020, and the adverse actions defendant took against her three days later. However, as the trial court correctly noted, even though the decision to offer the last-chance agreement was close in time to plaintiff's work-related injury, it was also temporally proximate to plaintiff's positive alcohol test results, which was defendant's legitimate reason for offering plaintiff the last-chance agreement.

Also as proof of causation, plaintiff presents a lengthy argument describing how Rousse's admission that she did not have a reasonable suspicion that plaintiff was under the influence of alcohol indicated a violation of defendant's policies regarding "Substance Abuse," and "Reasonable Suspicion/Probable Cause Drug and Alcohol Testing," and that plaintiff was nonetheless tested with the EBT at North Pine Clinic. Plaintiff further asserts that defendant was required by its own policies to follow federal regulations when performing alcohol and drug testing, which was not done with the EBT tests at North Pine Clinic. However, the evidence indicated that defendant did not order, administer, or even know about the alcohol tests, but simply received the positive test results from North Pine, then presented plaintiff with the last-chance agreement on the basis of those results. As defendant argued to the trial court, it "had to do something" after learning of those results.

Finally, plaintiff disputes causation by emphasizing defendant's financial incentive to retaliate, noting that defendant was self-insured for workers'-compensation claims and thus was required to set aside funds to pay such benefits. Plaintiff characterizes that arrangement as evidence of causation, on the ground that a self-insured entity who must pay workers'-compensation benefits from its own budget has motive to retaliate against a person who receives medical treatment for a work-related injury. Plaintiff additionally maintains that defendant having ultimately paid for plaintiff's medical benefits supported the inference that defendant was upset about doing so and thus retaliated against plaintiff.

However, plaintiff fails to show any causal connection between her seeking medical benefits for her work-related injury and defendant presenting her with the last-chance agreement. There is simply no evidence suggesting that Montei or Rousse expressed any displeasure toward plaintiff for reporting her work-related injury, or that any potential claim by plaintiff for workers'-compensation benefits was considered as of the time she was offered the last-chance agreement. Thus, as the trial court correctly concluded, there was no genuine issue of material fact that plaintiff failed to demonstrate any causal link between her seeking benefits for a work-related injury and defendant offering plaintiff the last-chance agreement. In fact, all the evidence indicated that defendant offered plaintiff the last-chance agreement after receiving reports that plaintiff had failed two alcohol tests during working hours.

Plaintiff asserts that because she had established a prima facie case of retaliation, the burden shifted to defendant to articulate a legitimate, nonretaliatory reason for the adverse employment action. See *Sniecinski v Blue Cross and Blue Shield of Mich*, 469 Mich 124, 134; 666 NW2d 186 (2003). "The articulation requirement means that the defendant has the burden of producing evidence that its employment actions were taken for a legitimate, nondiscriminatory reason." *Hazle v Ford Motor Co*, 464 Mich 456, 464; 628 NW2d 515 (2001). If the defendant articulates a legitimate business reason, the burden returns to the plaintiff to show that the defendant's proffered reason was not the true reason but was only a pretext for the adverse action. *Aho v Dep't of Corrections*, 263 Mich App 281, 289; 688 NW2d 104 (2004). A plaintiff may show pretext by demonstrating that the proffered reason had no basis in fact, did not actually motivate the decision, or was insufficient to justify the decision. *Meagher v Wayne State Univ*, 222 Mich App 700, 711-712; 565 NW2d 401 (1997). However, an employer's honest belief, "even if ultimately found to be objectively incorrect or improvident, precludes a finding of pretext or bad faith." *Jewett v Mesick Consol Sch Dist*, 332 Mich App 462, 477; 957 NW2d 377 (2020).

Plaintiff established no prima facie case of retaliation because she did not show a causal connection between seeking medical benefits for her workplace injury and the presentation of the last-chance agreement. However, even if such a connection had been established, the evidence supports the proposition that defendant had an honest belief regarding plaintiff's test results from North Pine Clinic.

Rousse and Montei were presented with the two test results positive for alcohol from North Pine, and thus had evidence that plaintiff was under the influence of alcohol while working. Rousse testified that she was not required to analyze the numerical values of the test results because any positive level was enough to indicate a policy violation. And, as noted, Montei explained that she and Rousse believed the difference in the test results between North Pine and Covenant "just verified that a positive test was a positive test and then there was a lapse of time and [plaintiff] went to Covenant and that [test] was negative." A further basis for defendant's honest belief was plaintiff's failure to report to work immediately following her positive test results, as defendant had instructed, which deprived defendant of the opportunity to timely observe plaintiff, giving rise to the suspicion that plaintiff had expected the delay to hinder defendant's opportunity to ascertain that she had in fact been under the influence of alcohol.

For these reasons, we conclude that the evidence supported defendant's honest belief that plaintiff tested positive on the tests from North Pine, and offered her the last-chance agreement accordingly.

Affirmed.

/s/ Michael J. Kelly
/s/ Kathleen Jansen
/s/ Christopher M. Murray

-8-